1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK R. PERCIVAL as the Administrator
of the Estate of Marion R. Wilson, deceased;
and WILLIAM L.E. DUSSAULT as
Litigation Guardian ad Litem of R.S.C. and
S.D.C., minor children,

           Plaintiffs,

      v.

GENERAL ELECTRIC COMPANY, a New
York corporation; ALL-CLAD
METALCRAFTERS, L.L.C., a Delaware
corporation; and ALBERT LEE, INC., d/b/a
ALBERT LEE APPLIANCE, a Washington
corporation,

           Defendants.

Case No.  C09-1802RSL

ORDER DENYING DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendant All-Clad Metalcrafters, L.L.C.'s

"Motion for Partial Summary Judgment Dismissal of Plaintiffs' Negligent Infliction of

Emotional Distress Claims."  Dkt. #7.  Defendant General Electric Company ("GE") joins in this

motion.  Dkt. #9.  Plaintiffs have brought various claims against defendants arising from the

death of Marion Wilson, including claims by her minor grandsons for negligent infliction of

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT

emotional distress.  Dkt. #1.  Defendants contend that the grandsons' negligent infliction of emotional distress claims should be dismissed because Washington allows only a limited class of plaintiffs to bring claims for negligent infliction of emotional distress, and grandchildren are not within that class.  Motion at 1–2 (Dkt. #7).  Plaintiffs respond that Washington law requires courts to evaluate the relationship between the plaintiff and the victim in order to determine whether the plaintiff bystander can maintain an action for negligent infliction of emotional distress.  Response at 2 (Dkt. #10).

The Court has reviewed the parties' submissions and heard oral argument.  For the reasons discussed below, the Court DENIES defendants' motion for partial summary judgment.

## II. FACTS

Decedent Marion Wilson died from injuries she sustained when her robe caught fire while making pancakes in her daughter's home.  Ms. Wilson was using a stove manufactured by GE and a griddle manufactured by All-Clad.  Ms. Wilson's grandsons, R.S.C. and S.D.C., were with her when the fire broke out.  They both saw her on fire and attempted to assist their grandmother in extinguishing the flames.[1]  The issue before the Court is whether the grandsons are within the class of plaintiffs who can bring a negligent infliction of emotional distress claim.

## III. DISCUSSION

**A.    The Court's Role**

"The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum."  Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir. 1980).  Where the state's highest appellate court has not spoken on an issue, the federal court's role is to predict what decision the state's highest court would reach.  See Evanston Ins. Co. v. OEA, Inc., 566

---

[1] Because defendants' motion raises a purely legal issue, the Court recites only those facts contained in the Complaint.  Each grandson has, however, submitted an affidavit to the Court.  The affidavits describe the boys' close relationship with their grandmother, what they saw and did the morning of the fire, and the horror of witnessing this event.  Dkt. #10-2, 10-3.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                    -2-

F.3d 915, 921 (9th Cir. 2009).  A federal court uses "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to predict how the state's highest court would rule.  Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004).  A federal court will follow the decisions of state intermediate appellate courts unless there is "convincing evidence" that the state's highest court would decide the issue differently.  Id.

**B.     Elements of Negligent Infliction of Emotional Distress Claims**

The parties agree that Washington law governs this matter.  Under Washington law, a person who suffers emotional harm as a result of witnessing physical injury inflicted on another can bring a bystander claim for negligent infliction of emotional distress.  See Hegel v. McMahon, 136 Wn.2d 122, 125–26 (1998).  The bystander plaintiff must be a "family member" who is present at the scene of the accident and can demonstrate "objective symptoms of emotional injury."  See Colbert v. Moomba Sports, Inc., 163 Wn.2d 43, 49–50 (2008).  The Supreme Court of Washington has not yet decided whether grandchildren are "family members" able to bring bystander claims for negligent infliction of emotional distress.

The Washington State Court of Appeals, however, has held that only family members enumerated in Washington's wrongful death statute, RCW 4.22.020, can bring bystander claims for negligent infliction of emotional distress.  Shoemaker v. St. Joseph Hosp. and Health Care Ctr., 56 Wash. App. 575, 580–81 (1990).  In Shoemaker, the plaintiff was in the room when her son jumped to his death from a hospital window.  Id. at 577.  The court of appeals found that Shoemaker was able to bring a claim for negligent infliction of emotional distress because parents are among the plaintiffs enumerated in the wrongful death statute.[2]  Id. at 580.

Defendants argue that plaintiffs' negligent infliction of emotional distress claims should

---

[2] The court clarified that the "economic status of dependency" required to bring a wrongful death action does not apply to family members bringing claims for negligent infliction of emotional distress. Shoemaker, 56 Wn. App. at 580.

be dismissed under <u>Shoemaker</u> because grandchildren are not included in the list of family members enumerated in the wrongful death statute.[3]  Motion at 6 (Dkt. #7).  After reviewing the Washington State Supreme Court's decisions addressing claims for negligent infliction of emotional distress, this Court concludes that there is convincing evidence that Washington's highest court would not apply the <u>Shoemaker</u> rule to the facts presented in this case.

**C.      The Development of the Tort of Negligent Infliction of Emotional Distress in Washington**

The Washington State Supreme Court first permitted a bystander to bring a claim for negligent infliction of emotional distress in <u>Hunsley v. Giard</u>, 87 Wn.2d 424 (1976).  The plaintiff in <u>Hunsley</u> suffered "heart stress" after her neighbor negligently drove her car into Ms. Hunsley's back porch utility room.  <u>Id.</u> at 425.  The court held that the traditional tort concept of foreseeability provided the primary limit on liability for negligent infliction of emotional distress.  <u>Id.</u> at 434–5.  The court said that a bystander could recover based on fear for another person but did not adopt a specific limit on the class of bystander plaintiffs able to recover for negligent infliction of emotional distress.  <u>Id.</u> at 436 ("We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress.").

Washington's rules governing claims for negligent infliction of emotional distress have evolved since <u>Hunsley</u>.  The state supreme court and courts of appeals have determined that the tort concept of foreseeability does not provide an adequate limit on liability (see <u>Colbert</u>, 163 Wn.2d at 50–54 (discussing cases)) although the exact boundaries of the tort have been difficult to discern.

The Washington Court of Appeals used proximity to the accident to limit the class of plaintiffs who can recover for negligent infliction of emotional distress in <u>Cunningham v. Lockard</u>, 48 Wn. App. 38 (1987).  The court held that the children of a woman who was severely

---

[3] Husbands, wives, state registered domestic partners, children, parents, sisters, and brothers are the plaintiffs enumerated in Washington's wrongful death statute.  RCW 4.20.020.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                    -4-

injured when she was hit by a car could not recover for negligent infliction of emotional distress because the children were not physically present when the accident occurred and did not learn about their mother's injuries until later.  Id. at 40–41, 44–45.  The Cunningham court concluded that Hunsley subjected defendants to "virtually unlimited liability" and that "a boundary establishing the class of persons who can sue must be drawn."  Id. at 44.  The Cunningham court adopted the limitations that the state supreme court had previously established for the tort of outrage, including the requirement that a bystander plaintiff be physically present when the accident occurs and be an immediate family member of the person harmed.  Id.

Three years after Cunningham, the Washington State Supreme Court addressed negligent infliction of emotional distress claims for a second time.  In Gain v. Carroll Mill Co., 114 Wn.2d 254, 255 (1990), a truck owned by the defendant struck and killed state trooper James S. Gain while he was stopped at the side of the road.  114 Wn.2d at 255.  Gain's father and brother brought an action for negligent infliction of emotional distress, claiming that they had seen footage of the accident on the television news and knew the trooper involved was Gain because they saw his vehicle license plate number.  Id.  The supreme court affirmed the trial court's dismissal of plaintiffs' claims on summary judgment.  The court agreed that limits on claims for negligent infliction of emotional distress were needed and held that family members must be present at the scene of the accident that injures their loved one, or arrive shortly thereafter, in order to recover for negligent infliction of emotional distress.  Id. at 260–61.  The court did not discuss the Cunningham view that negligent infliction of emotional distress claims should be limited by the same principles that limit outrage claims.  Nor did it use the term "immediate family members," as the Cunningham court had, to describe the class of potential plaintiffs.

The dissent in Gain highlighted the uncertainty created by the court's use of imprecise terms to describe the relationship that bystander plaintiffs must have with the injured person.  Justice Brachtenbach noted that the majority "haphazardly" referred to the relationship required as involving a "family member," a "loved one," and a "relative."  Id. at 266 (Brachtenbach, J.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                    -5-

dissenting).  He argued that "the majority's loose language will, someday, require us to decide whether a pet is a family member or loved one."  Id. at 266–67 (Brachtenbach, J. dissenting).  Despite Justice Bractenbach's argument, the court has continued to use all three terms to describe the required relationship.  See Colbert, 163 Wn.2d at 49, 62.

The Washington Court of Appeals issued the Shoemaker decision, upon which defendants rely, two months before Gain was decided.  The Gain opinion does not mention or discuss Shoemaker.  Eight years after Shoemaker and Gain were decided, the Washington State Supreme Court was presented with another opportunity to define "family member" for purposes of a negligent infliction of emotional distress claim.  The plaintiffs in Hegel v. McMahon were the son, parents, brother, and sister-in-law of Dale Hegel.  136 Wn.2d at 124.  Dale Hegel suffered serious injuries when he was hit by a passing car while stopped at the side of the road.  Id.  His parents and son, followed shortly thereafter by his brother and sister-in-law, happened upon the scene when he was still lying in a ditch beside the road "severely injured and bleeding."  Id.  The Washington State Supreme Court held that Hegel's family could recover even though they were not present when the accident occurred because the "appropriate rule should not be based on temporal limitations, but should differentiate between the trauma suffered by a family member who views an accident or its aftermath, and the grief suffered by anyone upon discovering that a relative has been severely injured."  Id. at 131.

The court neither addressed nor questioned Hegel's sister-in-law's ability to recover for negligent infliction of emotional distress.  In-laws are not included in the list of family members who may bring a wrongful death action.  As defendants correctly argue, the primary issue in Hegel was whether family members arriving on the scene of an accident shortly after it occurs can maintain claims for negligent infliction of emotional distress.  Id. at 126.  The court did not focus on the "family member" requirement.  Nonetheless, the fact that the court was faced with a

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                -6-

sister-in-law[4] plaintiff and made no mention of the <u>Shoemaker</u> limit on the class of permissible plaintiffs suggests that the court was not interested in limiting bystander plaintiffs to those enumerated in the wrongful death statute.  The <u>Hegel</u> court was aware of the <u>Shoemaker</u> decision; later in the opinion, the court rejected the <u>Shoemaker</u> court's requirement that plaintiffs demonstrate physical symptoms of emotional distress.  <u>Id.</u> at 133.

In addition, the <u>Hegel</u> court emphasized that while limits on liability for negligent infliction of emotional distress are necessary, they should not be arbitrary.  <u>Id.</u> at 130 (rejecting a bright line rule that "draws an arbitrary line that serves to exclude plaintiffs without meaningful distinction"); <u>id.</u> at 131 ("although we must reject artificial lines that serve only to restrict the number of plaintiffs, not every act that causes harm results in legal liability").  When determining who is permitted to bring a negligent infliction of emotional distress claim, the Supreme Court has focused on who was likely to suffer the shock caused by perceiving a horrendous event, not on a particular bright-line category.

The Washington State Supreme Court most recently addressed bystander claims for negligent infliction of emotional distress in <u>Colbert v. Moomba Sports, Inc</u>., 163 Wn.2d 43 (2008).  The court affirmed the trial court's dismissal of a father's claim for negligent infliction of emotional distress based on the drowning death of his daughter.  <u>Id.</u> at 63.  Colbert received a

---

[4] The Court notes that the relationship of one in-law to another may not be as close as that of a grandparent and grandchild.  As the United States Supreme Court has recognized, grandparents often play an "important role" in the lives of their grandchildren.  <u>Troxel v. Granville</u>, 530 U.S. 57, 64 (2000) (plurality opinion).  President Barack Obama, who was largely raised by his grandparents, refers to his grandmother as "the cornerstone of our family."  Donna Butts, Editorial, Wash. Post, Jan. 16, 2010 at A 17.  According to U.S. Census data, 5.8 million American adults over the age of thirty lived with at least one grandchild in 2000.  U.S. Dep't of Commerce, U.S. Census Bureau, Census 2000 Brief C2KBR-31, Grandparents Living with Grandchildren: 2000 1 (2003).  Racial minorities are more likely to live with their grandchildren than Whites.  <u>Id.</u> at 2 (while only two percent of non-Hispanic White adults lived with their grandchildren, six percent of Asians, eight percent of American Indians and Alaska Natives, eight percent of Blacks, eight percent of Hispanics and ten percent of Pacific Islanders over age thirty lived with their grandchildren).  By 2008, sixteen percent of Americans were living in multigenerational families.  Sam Roberts, <u>Extended Family Households Are on the Rise</u>, N.Y. Times, Mar. 19, 2010 at A12.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                    -7-

call from a friend of his daughter telling him that she had disappeared from the back of a boat and that a search for her was underway. Id. at 46. He watched the rescue operations from a friend's dock and saw his daughter's body recovered from the water from a distance of about 100 yards. Id. at 46–47. The court focused on the issue of whether Colbert saw the accident or its horrific attendant consequences, finding that his late arrival at the scene and fore-knowledge of the accident precluded recovery. Id. at 57, 59–60. The court used the term "family member" to describe bystander plaintiffs, see, e.g., id. at 56–57, but did not discuss the relationship that must exist between the plaintiff and the person injured in the accident.

In sum, the Washington State Supreme Court requires that a bystander be a "relative" or "family member" of the person harmed in the accident and that the person suffer the shock and trauma associated with the accident in order to recover for negligent infliction of emotional distress. Colbert, 163 Wn.2d at 49; Hegel, 136 Wn.2d at 131–32; Gain, 114 Wn.2d at 259–60. The court has not further limited the class of plaintiffs that are "family members" able to recover for negligent infliction of emotional distress. Despite numerous opportunities to do so, the court has not discussed or adopted the Shoemaker limitation on the class of plaintiffs eligible to bring claims for negligent infliction of emotional distress.

## IV. CONCLUSION

This Court concludes that the Washington State Supreme Court would not apply the Shoemaker limitation to exclude grandchildren from the class of potential plaintiffs in the circumstances presented here. The court's silent acceptance of an in-law plaintiff in Hegel strongly suggests that the court would not limit bystander recovery to the class of plaintiffs enumerated in the wrongful death statute. The purpose of the tort and the court's repeated statements that limits on negligent infliction of emotional distress actions should not be "arbitrary" supports this view. Barring a grandchild from bringing an action for negligent infliction of emotional distress, while permitting adult siblings to bring such claims, would be

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                     -8-

arbitrary.  The Washington State Supreme Court's opinions provide convincing evidence that the court would not bar grandchildren from bringing negligent infliction of emotional distress claims based on Shoemaker.[5]

For the foregoing reasons, the Court DENIES defendants' motion for summary partial judgment.  Plaintiffs R.S.C.. and S.D.C. may proceed with their claims for negligent infliction of emotional distress.

Dated this 30th day of April, 2010.

Robert S.  Lasnik
United States District Judge

---

[5] Two years after Shoemaker was decided, the Western District of Washington dismissed a negligent infliction of emotional distress claim based on the Shoemaker rule.  Lindsey v. Visitec, Inc., 804 F. Supp. 1340 (1992).  Kurt Lindsey was killed in a head on collision after the other driver fell asleep and crossed the center line into his lane; Vicki Bleifuss, his girlfriend/fiancée, was a passenger in Lindsay's truck and was also seriously injured in the accident.  Id. at 1341.  The Honorable Thomas S. Zilly concluded that "Washington courts have clearly indicated an unwillingness to extend recovery beyond family members described in the State's wrongful death statute."  Id. at 1344.
When Judge Zilly issued his order in Lindsey, the state supreme court had not yet decided Hegel. The state high court's silent acceptance of an in-law plaintiff in Hegel strongly suggests the court would not adopt the Shoemaker limit on the class of plaintiffs able to recover for negligent infliction of emotional distress.  In addition, Ms. Bleifuss, was not (yet) a family member of Mr. Lindsey.  In contrast, the case before this Court presents grandson plaintiffs who are blood relatives of the decedent.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT                    -9-